UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                v.                                            1:08-CR-385
                                                                     (FJS)

CASH WHITMORE, KING S. BURDEN,
and MYAISHA G. WHITMORE,

                                         **Defendants.**

_____

**APPEARANCES**                                   **OF COUNSEL**

**OFFICE OF THE UNITED**            **DANIEL HANLON, AUSA**
**STATES ATTORNEY**
James T. Foley U.S. Courthouse
445 Broadway
Albany, New York 12207-2924
Attorneys for the United States

**OFFICE OF BRIAN W. DEVANE**        **BRIAN W. DEVANE, ESQ.**
636 Delaware Avenue
Delmar, New York 12054
Attorneys for Defendant Cash Whitmore

**OFFICE OF PAUL A. CLYNE**           **PAUL A. CLYNE, ESQ.**
61 Columbia Street, Suite 401
Albany, New York 12210
Attorneys for Defendant Burden

**OFFICE OF MARK J. SACCO**           **MARK J. SACCO, ESQ.**
38 North Ferry Street
Schenectady, New York 12305
Attorneys for Defendant Myaisha Whitmore

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Currently before the Court are Defendant Cash Whitmore's motion to suppress, *see* Dkt.

No. 74;[1] Defendant Burden's motion to suppress and to sever his trial from the trial of his co-Defendants, *see* Dkt. No. 69; and Defendant Myaisha Whitmore's motion to suppress and to sever her trial from the trial of her co-Defendants, *see* Dkt. No. 73.

The Court heard oral argument in support of and in opposition to these motions on July 1, 2009, and reserved decision. The following is the Court's resolution of the pending motions.

## II. BACKGROUND

Count 1 of the two-count Indictment charges that Defendants "did knowingly and intentionally combine, conspire, confederate and agree with each other and others known and unknown to possess with intent to distribute and to distribute cocaine base (crack), a Schedule II controlled substance" in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846. *See* Indictment, Count 1. Count 1 also charges that "[t]he quantity of the mixture and substance containing cocaine base (crack) involved in the conspiracy exceeded fifty grams; thus the defendants are subject to the penalty provisions of Title 21, United States Code, Section 841(b)(1)(A)." *See id.*

Count 2 of the Indictment charges "[t]hat on or about June 27, 2008, in the City of Hudson, in the State and Northern District of New York," Defendant Cash Whitmore "did knowingly, willfully and intentionally possess with the intent to distribute in excess of fifty grams of cocaine base (crack), a Schedule II controlled substance" in violation of 21 U.S.C. §§ 841(a)(1), (B)(1)(A). *See* Indictment, Count 2.

---

[1] Although Defendant Cash Whitmore captioned his motion as a motion to suppress, his motion also contains several discovery requests, which the Court will discuss *infra*.

Finally, the Indictment charges that Defendant Cash Whitmore committed both of the offenses set forth in Counts 1 and 2 "after a prior conviction for a felony drug offense became final" and that Defendant Myaisha Whitmore committed the offense charged in Count 1 "after a prior conviction for a felony drug offense became final . . . ." *See* Indictment. The Indictment further asserts that "[e]ach of the foregoing prior final drug felony convictions affects the penalty provisions of Title 21, United States Code, Section 841(b)(1)(A), which apply to each of Counts 1 and 2, and subjects each defendant to enhanced penalties." *See id.*

## III. DISCUSSION

**A.    Defendant Cash Whitmore's discovery requests**

Defendant Cash Whitmore requests the following relief: (1) an Order precluding the Government from calling state agents as expert witnesses to interpret the meaning of certain intercepted telephone conversations or, in the alternative, for a *Daubert* hearing; (2) an Order directing the Government to comply fully with its Rule 16 discovery obligations, pursuant to Rule 12 and 41(f) of the Federal Rules of Criminal Procedure and directing the Government to provide all material which could exculpate him or mitigate his culpability pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure and *Brady v. Maryland*, 373 U.S. 83 (1963); (3) an Order excluding the admission of out-of-court statements that are testimonial in nature that have not been subjected to cross-examination pursuant to *Crawford v. Washington*, 124 S. Ct. 1354 (2004); and (4) an Order pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure and Rules 404(b) and 609 of the Federal Rules of Evidence requiring the Government to set forth those prior and subsequent acts of misconduct as well as prior convictions, that it intends to

-3-

introduce into evidence and for a hearing prior to trial to determine the admissibility of such evidence.  *See* Defendant Cash Whitmore's Notice of Motion at ¶¶ 2-5.

With respect to Defendant Cash Whitmore's first request, the Government responds that, "at this time, it does not intend to elicit evidence from law enforcement members as to their interpretation or opinion of the meaning of certain coded phrases contained within intercepted conversations of [Defendant Cash Whitmore]."  *See* Government's Memorandum of Law at 27.

Based on the Government's representation, the Court denies Defendant Cash Whitmore's motion with regard to this issue without prejudice and with leave to renew if the Government, at some point, decides to elicit such testimony.

With respect to Defendant Cash Whitmore's second request, the Government responds that "no known *Brady* material exists at the present time, except as to that material provided and material which will be provided pursuant to the Government's continuing legal and ethical obligation."  *See id.* at 27-28.  The Government further states that it will provide *Brady* exculpatory material to Defendant Cash Whitmore as it becomes known to the Government and will provide him with *Brady* impeachment material at the same time that it turns over Jencks Act material to him.  *See id.* at 28

Based on the Government's representations, the Court denies Defendant Cash Whitmore's motion with regard to this issue without prejudice and with leave to renew if necessary.

With respect to Defendant Cash Whitmore's third request, the Government states that it is aware of, and has no intention of violating, the rule announced in *Crawford v. Washington*, 124 S. Ct. 1354 (2004).  *See id.*  Furthermore, the Government notes that Defendant Cash Whitmore has not "identif[ied] the specific potential evidence he objects to."  *See id.*  Finally, the

Government states that it will address any specific objections that Defendant Cash Whitmore has about the admissibility of certain evidence when he raises those objections. *See id.*

Based on the Government's representations, the Court denies Defendant Cash Whitmore's motion with respect to this issue without prejudice and with leave to renew if necessary.

Finally, with respect to Defendant Cash Whitmore's fourth request, the Government responds that, "at this stage of the case it is not clear whether the Government will offer 404(b) evidence, and it may not be clear until the time of trial when . . . [D]efendant [Cash Whitmore] raises issues that might be countered by such evidence." *See id.* at 29. Furthermore, the Government states that it "is aware of its obligations under . . . Rule [404(b)] and will 'provide reasonable notice in advance of trial . . .' of its intention to introduce 404(b) evidence, to the extent it has not already done so." *See id.* Finally, the Government asserts that, "[u]nless . . . [D]efendant [Cash Whitmore] 'opens the door' to evidence of prior bad acts or previous convictions, the Government does not intend to offer Fed. R. Evid. 404(b) or 609 evidence other than to the extent it is necessary to establish [Defendant] Cash Whitmore's prior drug felony conviction." *See id.* Therefore, the Government states that, although it "does not oppose further discovery of Rule 404(b) evidence . . . [, it] submits that wholesale exclusion of such evidence is unwarranted and untimely." *See id.*

Based on the Government's representations, the Court denies Defendant Cash Whitmore's motion with respect to this issue without prejudice and with leave to renew if necessary.

**B.     Defendants Burden's and Myaisha Whitmore's motions for severance**[2]

Defendants Burden and Myaisha Whitmore move for severance on the ground that they were "charged as part of a single conspiracy notwithstanding the fact that the evidence before the Grand Jury most likely established multiple conspiracies involving primarily Cash Whitmore and several others." *See* Defendant Burden's Memorandum of Law at 23.  Furthermore, they argue that, "[b]y presenting evidence of other conspiracies and conversations, unrelated to [their] alleged conspiracy with Cash Witmore [sic], the conversations and conspiracies of seven other people are impliedly linked to [them] . . . and [will] prejudice [them]." *See id.*

In response, the Government argues that, because all Defendants are charged in Count 1 with a conspiracy to distribute and possess with intent to distribute cocaine base, they are properly joined pursuant to Rule 8(b) of the Federal Rules of Criminal Procedure.  *See* Government's Memorandum of Law at 29.  Furthermore, the Government asserts that separate trials are not required simply because the role of a particular defendant is smaller than the role of other co-conspirators or because some evidence is admissible against one defendant and not others.  *See id.* at 30 (citations omitted).

In ruling on a motion for severance under Rule 14 of the Federal Rules of Criminal Procedure, "[t]he trial court must weigh the inconvenience and expense to the government and witnesses of separate trials against the prejudice to the defendants inherent in a joint trial . . . ." *United States v. Santoni*, 585 F.2d 667, 674 (2d Cir. 1978).  The party moving for severance "must show something more than merely a better chance of acquittal and 'must overcome the

---

[2] Since Defendants' arguments in support of their motions are substantially the same, the Court will cite to Defendant Burden's submissions only.

burden imposed by a stringent standard of review.'" *Id.* (quotation omitted). In fact, a court should grant a motion for severance only "if there is a serious risk that a joint trial would either compromise a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998) (citation omitted).

Moreover, "[a] defendant seeking severance must show that the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials." *Id.* "Rule 14 does not require severance, even if prejudice is shown." *Id.* (citation omitted). Rather, Rule 14 "leaves the type of relief granted to the sound discretion of the trial court." *Id.* (citation omitted). Often, a limiting instruction is "sufficient to cure any risk of prejudice." *Id.* (citation omitted). Finally, "'"differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials."'" *United States v. Torres*, 901 F.2d 205, 230 (2d Cir. 1990) (quotation omitted).

The primary basis for Defendants' motions for severance appears to be their assertion that, despite the fact that the Government has alleged a single conspiracy, it will not be able to prove a single conspiracy because it is more likely that Defendant Cash Whitmore was involved in multiple conspiracies and that their roles, if any, in the conspiracy were minimal. This is very similar to the argument that the court rejected in *United States v. Stirling*, 571 F.2d 708 (2d Cir. 1978), in which, mid-trial, the defendant moved for severance pursuant to Rule 14. The defendant argued that "the indictment charged, and the evidence showed, multiple conspiracies rather than a single conspiracy; that he was, at most, involved in only one of those conspiracies; and that the forced combination of his trial with that of the others operated to his substantial

prejudice." *Id.* at 732.

In rejecting this argument, the court noted that the indictment charged a single conspiracy and that the fact that the indictment "alleged a variety of devices intended to accomplish this objective, devices carried out by a variety of individuals, [did] not alter the fundamental nature of the indictment itself." *Id.* Therefore, the court found that "the question [was] whether the government established the existence of the alleged conspiracy . . . [and held that] [t]his [was] a matter 'primarily for the jury, since it [was] a question of fact as to the nature of the agreement.'" *Id.* at 732-33 (quotation and other citation omitted).

In this case, the Indictment, on its face, charges a single conspiracy, and the question of whether the Government will be able to prove that a single conspiracy existed must await trial. Therefore, the issue is not whether Defendants were properly joined but rather whether the Court should exercise its discretion to sever Defendants Burden's and Myaisha Whitmore's trials from the trials of their co-Defendants.

Defendants Burden and Myaisha Whitmore have not demonstrated that a joint trial would either compromise one of their trial rights or prevent a jury from reaching a decision about their guilt or innocence. *See Walker*, 142 F.3d at 110. Nor have they shown that any prejudice that they might suffer as a result of a joint trial would be sufficiently severe to outweigh the judicial economy that would result from not having to conduct multiple trials. *See id.* Their primary argument appears to be that, because they played lesser roles (if any role at all) in the alleged conspiracy, they will be prejudiced if they are tried with their co-Defendants. This argument, standing alone, is insufficient to warrant severance. *See Torres*, 901 F.2d at 930. Therefore, the Court denies Defendants Burden's and Myaisha Whitmore's motions for severance.

**C.    Defendants' motions to suppress evidence obtained through the interception of electronic communications performed pursuant to eavesdropping warrants issued on May 5, 2008, and June 4, 2008**

Between May 5, 2008, and July 1, 2008, the Honorable Daniel K. Lalor, Acting Supreme Court Justice, sitting in Green County, issued orders authorizing the interception of conversations occurring over six different cellular phones pursuant to Article 700 of New York Criminal Procedure Law.  Justice Lalor issued these Orders based on the applications of Greene County District Attorney Terry Wilhelm and the supporting affidavits of Investigators Christopher Lapham and Eugene O'Neill of the New York State Police, Community Narcotics Enforcement Team.

All three Defendants move to suppress the intercepted conversations resulting from the execution of the Eavesdropping Order in effect from **May 5, 2008, through June 4, 2008**, that authorized the interception of conversations occurring over the cellular telephone assigned number **(518) 821-2148**, which Defendant Cash Whitmore allegedly used.  The court **extended** this Eavesdropping Order on **June 4, 2008.**  In addition, Defendants Cash Whitmore and Burden seek to suppress all of the intercepted conversations resulting from the execution of the Eavesdropping Order in effect from **June 4, 2008, through July 1, 2008**, authorizing the interception of conversations occurring over the cellular telephone assigned Push-to-Talk number **103*740*12031**, which Defendant Cash Whitmore allegedly used.

### *1. Compliance with 18 U.S.C. § 2518(1)(c)*

Section 2518(1)(c) requires that an application for an interception of telephone calls must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous . . . ." 18 U.S.C. § 2518(1)(c). Similarly, § 2518(3)(c) requires that the judicial officer to whom an application for a wiretap is made must determine, as a condition of authorizing the tap, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous . . . ." 18 U.S.C. § 2518(3)(c).

In *United States v. Kahn*, 415 U.S. 143 (1974), the Supreme Court stated that § 2518 "is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *Id.* at 153 n.12 (citation omitted). The purpose of the statute "'is not to preclude resort to electronic surveillance until after all other possible means of investigation have been exhausted . . . .'" *United States v. Vazquez*, 605 F.2d 1269, 1282 (2d Cir. 1979) (quotation and other citation omitted). Rather, the statute only requires that "'the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods.'" *Id.* (quotation and other citation omitted).

Despite Defendants' arguments to the contrary, the affidavits of both Investigator Eugene O'Neill and Investigator Christopher Lapham provide detailed information about what other investigative procedures they had tried or why they believed such procedures were unlikely to succeed if tried or would be too dangerous. For example, in his affidavit dated May 5, 2008, Investigator Lapham stated that, although he conducted numerous physical surveillances in the

area around Santos Guity's residence and saw numerous people walk up to, enter, and exit the apartment building, he could not see whether they went into Mr. Guity's apartment. *See* Affidavit of Christopher Lapham dated May 5, 2008, at ¶ 35(1). He also noted that, although "[p]hysical surveillance ha[d] been utilized . . . and ha[d] met with some success . . . it reasonably appear[ed] to be unlikely that it would succeed on its own." *See id.* Investigator Lapham also stated that, based on his experience and his conversations with the District Attorney, he "believe[d] that subpoenaing persons believed to be involved in this conspiracy and their associates before a Greene County Grand Jury would not be completely successful in achieving the stated goals of the investigation" because the conspirators, if called, would most likely invoke their Fifth Amendment privilege not to testify, immunizing them would not ensure that they would provide truthful testimony, and "service of Grand Jury subpoenas upon the principals of the conspiracy or their co-conspirators would only alert them to the existence of this investigation, causing them to become more cautious in their activities, to flee to avoid further investigation or prosecution, to threaten the lives of the informants or to otherwise compromise the investigation." *See id.* at ¶ 35(2).

Finally, Investigator Lapham stated that, "[a]lthough confidential sources ha[d] been developed over the course of this investigation, they ha[d] been of limited use as they [were] unable to identify the source of supply of [various individuals, including] **CASH O. WHITMORE**, . . . or the extent and scope of their organization and criminal activity." *See id.* at ¶ 35(3). Furthermore, "[t]he confidential sources ha[d] not been able to provide information that would allow law enforcement to determine the full extent of the customer base of [among others] **CASH O. WHITMORE** . . . . The confidential sources [were] also reluctant or entirely

unwilling to testify against [among others] **CASH O. WHITMORE** . . . for fear of their safety and well being." *See id.* Investigator Lapham provided additional information about the use of or decision not to use other normal investigatory techniques, such as interviews of subjects of associates, search warrants, and pen registers. *See id.* at ¶ 35(4), (5), (6).

In both of his affidavits dated June 4, 2008, Investigator O'Neill provided information similar to that found in Investigator Lapham's affidavit regarding other investigatory techniques. *See* Affidavit of Eugene O'Neill III (Affidavit in Support of the Application Extension for (518) 821-2148), dated June 4, 2008, at ¶ 33; Affidavit of Eugene O'Neill III (Affidavit in Support of the Application for 103*740*12031), dated June 4, 2008, at ¶ 33.

Based on its review of the information provided in these affidavits, the Court finds that these affidavits set forth sufficient information about the use of, or the decision not to use, other investigatory techniques to satisfy the requirements of 18 U.S.C. § 2518(1)(c).

### 2. *Probable cause determination*[3]

Defendants argue that the affidavits of Investigator Lapham and Investigator O'Neill are insufficient, on their faces, to establish probable cause to believe that a person named Cash Whitmore was engaged in illegal drug trafficking or that evidence of drug crimes would be obtained through the interception of communications over cellular telephone numbers (518) 821-2148 or 103*740*12031 under either the totality-of-the-circumstances standard set forth in *Illinois v. Gates*, 462 U.S. 213 (1963), or the more stringent state standard set forth in *Aguilar v.*

---

[3] Since Defendants' arguments in support of their motions are substantially the same, the Court will cite to Defendant Cash Whitmore's submissions only.

*Texas*, 378 U.S. 108 (1964), and *Spinelli v. United States*, 393 U.S. 372 (1969).[4]

Specifically, Defendant Cash Whitmore states that, although Investigator Lapham detailed a number of drug sales by individuals other than Defendant Cash Whitmore, nobody ever identified Defendant Cash Whitmore as selling that person drugs. Moreover, he asserts that there is nothing in Investigator Lapham's affidavit about the basis for the conclusion that Defendant Cash Whitmore is the person using a phone with the number (518) 821-2148 or that he is the registered subscriber for that telephone. *See id.* Furthermore, Defendant Cash Whitmore contends that no one ever claimed to know and recognize his voice, and no one ever stated to police that he had personal knowledge that a person known to him as Cash Whitmore could be contacted by dialing (518) 821-2148.

Defendant Cash Whitmore also states that informant C.S.-4, who told police that Defendant Cash Whitmore was supplying other people with drugs, never advised police of the basis for his knowledge and never made an identification of Defendant Cash Whitmore. Thus, Defendant Cash Whitmore argues that there is nothing in Investigator Lapham's affidavit from which the state court could have assessed informant C.S.-4's reliability.

With respect to Investigator O'Neill's affidavit, Defendant Cash Whitmore states that it "consists primarily of summaries of calls that were intercepted pursuant to several warrants issued on May 5, 2008. . . . Of those 22 call summaries, five are summaries of calls intercepted

---

[4] Only two of the intercepted conversations involved Defendant Burden – "one under the eavesdropping warrant issued for telephone having number 103*740*12031, and one under the eavesdropping warrant issued for telephone having number (518) 821-2148." *See* Defendant Burden's Memorandum of Law at 12. Only five of these conversations involved Defendant Myaisha Whitmore – all of which were intercepted under the eavesdropping warrant issued for the telephone having the number (518) 821-2148. *See* Defendant Myaisha Whitmore's Memorandum of Law at 8-9.

under the May 5, 2008 warrant authorizing the interception of calls to and from telephone (518) 821-2148." *See* Defendant Cash Whitmore's Memorandum of Law at 7.  Defendant Cash Whitmore argues that "[t]hose calls are tainted as the product of an eavesdropping warrant that was issued in the absence of probable cause and cannot be considered when determining the propriety of the issuance of the warrant on June 4, 2008." *See id.* at 7.

Finally, Defendant Cash Whitmore contends that there are no subscription records to indicate that he was the registered subscriber for telephone number 103*740*12031 and that "[n]othing was submitted that would indicate the evidence of drug transactions would be obtained from intercepting communications over the telephone having number 103-740-12031." *See id.*  Defendant Cash Whitmore claims that Investigator O'Neill's affidavit "does not indicate how the voice of the person alleged to be 'Whitmore' was identified." *See id.*  Specifically, he contends that "Investigator O'Neill does not allege that he knows the voice of the person who is alleged to be Cash Whitmore.  No telephone call was ever placed to 103-740-12031 to ascertain who was using that phone or to make a voice comparison to the individual purportedly using phone (518) 821-2148." *See id.*

The standard for determining whether probable cause exists is the same whether it is a wiretap or a regular search warrant that is at issue. *See United States v. Aparo*, 221 F. Supp. 2d 359, 370 (E.D.N.Y. 2002) (citation omitted).  In *Illinois v. Gates*, 462 U.S. 213 (1983), the Supreme Court held that the issuing magistrate's task is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that . . . evidence of a crime will be found . . . ." *Id.* at 238.  Furthermore, "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de*

*novo* review" and a reviewing court should pay great deference to the issuing magistrate's finding of probable cause. *See id.* at 236 (citation omitted).

With regard to Defendants' argument that the Court should apply the more stringent state warrant requirements, the Second Circuit has already addressed and rejected that argument. *See United States v. Rowell*, 903 F.2d 899 (2d Cir. 1990). In *Rowell*, the defendant argued that New York courts had rejected the *Gates* probable cause standard in favor of the more restrictive *Aguilar-Spinelli* test and that, therefore, the court should apply the stricter state standard. *See id.* at 901 (citing *People v. Griminger*, 71 N.Y.2d 635, 529 N.Y.S.2d 55, 57, 524 N.E.2d 409, 411 (1988)). In rejecting this argument, the court reiterated its holding in *United States v. Pforzheimer*, 826 F.2d 200 (2d Cir. 1987), that "'federal law should apply to . . . federal criminal prosecution[s] *even though the underlying investigation leading to prosecution was conducted solely by state officials*.'" *Rowell*, 903 F.2d at 901 (quoting [*Pforzheimer*, 826 F.2d] at 204 (emphasis added)). The *Rowell* court also noted that, in *United States v. Nersesian*, 824 F.2d 1294 (2d Cir. 1987), it had reached the same conclusion with respect to "a state-issued warrant which authorized wiretapping by state and federal authorities." *Id.* Thus, based on *Pforzheimer* and *Nersesian*, the *Rowell* court determined that "the appropriate standard of probable cause for determining [the defendant's] motion to suppress the wiretap evidence is the federal 'totality of the circumstances' standard." *Id.* (citing *Gates*, 462 U.S. at 230-32, 103 S. Ct. at 2328). Finally, the *Rowell* court noted that this conclusion was "supported by prior decisions of the Supreme Court . . . [and] [p]olicy considerations, particularly a concern for the 'uniformity of criminal evidentiary jurisprudence in the federal courts' . . . ." *Id.* at 901-02 (internal quotations and citations omitted).

Under the Supreme Court's decision in *Gates*, "probable cause for a search warrant is established if the 'totality-of-the-circumstances' indicate a probability of criminal activity." *Rowell*, 903 F.2d at 902 (quotation omitted).  "'[P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules.'" *Id.* (quotation omitted).  Furthermore, "[o]n . . . review, a determination of probable cause deserves 'great deference,' and will be upheld so long as there was 'a "substantial basis for . . . conclud[ing]" that a search warrant would uncover evidence of wrongdoing.'" *Id.* (quotation and other citation omitted).

Finally, with regard to the veracity and reliability of informants, the *Rowell* court noted that "'[a] witness to a crime "need *not* be shown to have been previously reliable before the authorities may rely on his statements."'" *Id.* at 903 (quotation and other citation omitted).[5]

Keeping in mind the *Gates* totality-of-the-circumstances test, as well as the deference due the issuing justice's probable cause determination, the Court has reviewed the affidavits of Investigator Lapham and Investigator O'Neill.  Having done so, the Court concludes that these affidavits provided the issuing judicial officer with more than a substantial basis for concluding that there was a fair probability that the wiretaps of the telephones in question would uncover criminal activity.[6]

---

[5] In this regard, the *Rowell* court noted that "the reliability of one of the informants [was] indicated by his statement, made against penal interest, that he had personally purchased cocaine from [the defendant] . . . [and] the statements of both informants [were] corroborated by the pen register records described in the [officer's] affidavit. . . ." *Rowell*, 903 F.2d at 103 (internal citations omitted).

[6] Defendants also argue that, because Investigator O'Neill had not signed his affidavit at the time that the District Attorney incorporated it into the wiretap application, the Court should
(continued...)

## IV. CONCLUSION

After a thorough review of the entire record in this case, the parties' submissions and oral arguments, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant Cash Whitmore's request for an Order precluding the Government from calling state agents as expert witnesses to interpret the meaning of certain intercepted telephone conversations or, in the alternative, for a *Daubert* hearing, is **DENIED** without prejudice and with leave to renew if the Government decides, at some point, to elicit such testimony; and the Court further

**ORDERS** that Defendant Cash Whitmore's request for an Order directing the Government to comply fully with its Rule 16 discovery obligations, pursuant to Rules 12 and 41(f) of the Federal Rules of Criminal Procedure and directing the Government to provide all material which could exculpate him or mitigate his culpability pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure and *Brady v. Maryland*, 373 U.S. 83 (1963), is **DENIED** without prejudice and with leave to renew if necessary; and the Court further

**ORDERS** that Defendant Cash Whitmore's request for an Order excluding the admission of out-of-court statements that are testimonial in nature that have not been subjected to cross-examination pursuant to *Crawford v. Washington*, 124 S. Ct. 1354 (2004), is **DENIED** without prejudice and with leave to renew if necessary; and the Court further

---

[6](...continued)
suppress the evidence. The Court finds that this argument is without merit. It is clear that, prior to signing the wiretap warrant, the issuing judicial officer witnessed the signature of Investigator O'Neill on his affidavit. Thus, prior to the issuance of the warrant, whatever technical deficiency existed was cured by the acts of a neutral judicial officer, who was in the best position to determine that probable cause existed.

**ORDERS** that Defendant Cash Whitmore's request for an Order pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure and Rules 404(b) and 609 of the Federal Rules of Evidence requiring the Government to set forth those prior and subsequent acts of misconduct, as well as prior convictions, that it intends to introduce into evidence and for a hearing prior to trial to determine the admissibility of such evidence is **DENIED** without prejudice and with leave to renew if necessary; and the Court further

**ORDERS** that Defendant Burden's and Defendant Myaisha Whitmore's motions to sever their trials from the trials of their co-Defendants are **DENIED**; and the Court further

**ORDERS** that Defendant Cash Whitmore's, Defendant Burden's and Defendant Myaisha Whitmore's motions to suppress communications intercepted pursuant to eavesdropping warrants issued on May 5, 2008, and June 4, 2008, and any extensions thereof, are **DENIED**.

**IT IS SO ORDERED.**

Dated: August 29, 2009
　　　　Syracuse, New York

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　Frederick J. Scullin, Jr.
　　　　　　　　　　　　　　　　　　　Senior United States District Court Judge